Opinion approved by the Court.

**A. T. HALBERT, Appellant,**

v.

**Cone GREEN et ux., Appellees.**

No. 3198.

Court of Civil Appeals of Texas.

Eastland.

Dec. 9, 1955.

Rehearing Denied Jan. 20, 1956.

Tom Gordon, Abilene, for appellant.

Allison & Allison, Levelland, for appellees.

GRISSOM, Chief Justice.

A. T. Halbert sued Cone Green and wife in trespass to try title to an undivided ⅛th interest in the minerals in Sections 63, 82, 83 and the North ½ of Section 98, Block D, H. & T. C. Ry. Co. Surveys in Stonewall County. In a trial to the court, judgment was rendered that Halbert take nothing and he has appealed.

On October 13, 1952, Mayme L. Cullum and Willard D. McRimmon executed a mineral deed to A. T. Halbert which pur-

ported to convey an undivided ⅛th interest in the minerals in said 3½ sections. Thereafter, Halbert made an agreement with Green, W. C. Kinser and Mrs. Edgar to sell them mineral interests in said sections. Halbert agreed to convey to Green and wife 15 acres of minerals in Sections 63, 82 and 83, and, on October 29, 1952, Halbert executed a mineral deed purporting to convey to the Greens said interest in the minerals, which interest was described as " * * * an undivided 15/2000 interest in and to all of the * * * minerals in and under and that may be produced from the following described lands * * *. to-wit: An undivided 5/2000 interest in and under each of the following three Sections of land * * *."

Mr. Halbert testified that he thought he was buying from Cullum and McRimmon "term minerals, perpetuated by production;" that when abstracts were received they learned, in December, 1952, that he had bought "term minerals" that "would not be perpetuated by production;" that he then had an agreement with Green to trade him 8 acres of royalty under five sections for 8 of the 15 acres of minerals he had purported to convey in said three sections to Green and to pay him $175 per acre for the remaining 7 acres of minerals; that he executed and delivered such a royalty deed and paid Green the $1,225 and Green gave him a quitclaim deed to the minerals he had purported to convey to Green. It is undisputed that the Greens executed said quitclaim mineral deed to Halbert on February 26, 1953, and that the Halberts executed and delivered said royalty deed, a check for $1,225 and a "correction" deed on February 27, 1953. But, by the instrument frequently referred to as a "correction" deed, regardless of what the oral agreement was, Halbert conveyed a fifteenth interest in the royalty in the three sections in controversy for a term expiring in 1960. Green contends that, in addition to the royalty under five sections and $1,225, he was to be paid 15 acres of minerals in the three sections in controversy and that said "correction" deed conveyed said minerals. Halbert contends the entire consideration was ⅛th of the royalty in five sections and $1,225. Said "correction" deed, omitting the formal parts, is as follows:

"Whereas, by mineral deed dated October 29, 1952 and now of record in Vol. 118, page 579, of the Deed Records of Stonewall County, Texas, A. T. Halbert of Jones County, Texas, conveyed to Cone Green and his wife, Mattie Green, of Levelland, Texas, an undivided 15/2000ths interest in and to an undivided 5/2000ths interest in and to all of the oil, gas and other minerals in and under and that might be produced from the following described lands, situated in Stonewall County, Texas, to-wit:

"All of Sections 63, 82 and 83 in Block D, H & T C Ry. Co. Surveys in said county, said three sections recited in said deed as containing 2000 acres, more or less, and with the usual provisions for the rights of ingress and egress for the purpose of mining, drilling, exploring, operating and developing said lands for the production of oil and/or gas.

"And Whereas, in truth and in fact said deed contained a misdescription of the interest in said minerals in and under said land intended to be conveyed by said grantor to said grantees.

"And Whereas, Mrs. Mozelle I. Halbert of Jones County, Texas, wife of the said A. T. Halbert, now owns an interest in said minerals.

"And Whereas, it was the intention and desire of all parties to said deed that the interest to be conveyed thereunder was a 15/2000ths interest in and to all of the minerals located in, on or under said three sections of land.

"And Whereas, it was the further intention of the parties to said deed that the said A. T. Halbert as grantor should convey to said grantees a 15 acre mineral interest in and to said minerals in and under and to be produced from said three sections of land, and it now has been ascertained that said three sections actually then con-

tained a total area of 1987.4 acres, and in using the figure 2000 as a denominator for said fractional interest the said grantees did not actually receive their full complement of 15 mineral acres.

"And Whereas, it is the desire of all parties above named that the above described conveyance from the said A. T. Halbert to the said Cone Green and wife be corrected so as to show the true interest intended to be conveyed by such deed in accordance with the above statements.

"And Whereas, by the terms of said deed dated October 29, 1952 an undivided interest in all of the minerals in, on or under or to be produced from said three sections of land was conveyed, when as a matter of fact the only interest then owned in said lands by the grantor was a royalty interest.

"Now Therefore, Know All Men By These Presents: That I, A. T. Halbert, joined herein by my wife, Mozelle I. Halbert, of Jones County, Texas, for and in consideration of the premises and for the purpose of correcting the conveyance above described, have granted, bargained, sold and conveyed, and we by these presents do grant, bargain, sell and convey unto the said Cone Green and wife, Mattie Green, of Levelland, Texas, an undivided 15/1987.4 interest in and to all of the royalty oil, royalty gas and royalty on other minerals, in, on and under or that may be produced from the following described tracts of land situated in the County of Stonewall and State of Texas, and being all of Sections 63, 82 and 83 in Block D, H. & T. C. Ry. Co. Surveys in said county, and containing an aggregate within said three sections of 1987.4 acres, more or less, together with all rights of ingress and egress at all times for the purpose of exploring, mining, developing and removing said minerals therefrom. It is further expressly agreed and understood that this deed is in lieu of and in correction of

and in substitution of the said deed dated October 29, 1952, to the said Cone Green and wife, and the terms and provisions of this deed and the grants and conveyances herein made shall be operative as of October 29, 1952, and retroactive to said date.

"It is further understood and agreed and hereby stipulated that said land was on October 29, 1952, under an oil and gas lease made by grantors' predecessors in title, providing for a royalty of 1/8th of the oil and certain royalties for gas and other minerals and that the grantees herein shall receive 15/1987.4 of the royalties provided for in said lease on all production had on said lands or any part of them since the said 29th day of October, 1952, but that the grantees shall have no part in the annual rentals which may have been paid or may be paid to keep such lease or leases in force until drilling is begun on said land.

"It is further understood that the grantees' interest in said minerals is only a royalty interest, as above set out, and that they shall likewise have no interest in any bonus money that may be received by lessors in any future lease or leases on said land, and that it shall not be necessary for the grantees to join in any such lease or leases but that the grantees shall receive under any such leases covering said three sections of land or any part thereof, a 15/15899.2 part of all oil, gas and other minerals produced and saved under any such lease or leases and that they shall receive such part of all oil, gas and other minerals as is represented by their royalty interest of 15/1987.4 above set out.

"It is further understood and stipulated that the rights herein and hereby granted and the mineral interests herein and hereby conveyed automatically cease, end and terminate on the 30th day of April, 1960.

"To have and to hold the above described property, together with all and

singular the rights and appurtanances thereto in anywise belonging, unto the said Cone Green and wife, Mattie Green, their heirs and assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said Cone Green and wife, Mattie Green, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, if claiming by, through or under us or either of us and no further."

Green contends said "correction" deed conveyed to him 15 acres of minerals in Sections 63, 82 and 83. Halbert contends it conveyed nothing. The court concluded that it conveyed 15 acres of royalty for a term ending in 1960. The court's conclusion was unquestionably correct. That portion of the "correction" deed was unambiguous and not susceptible to any other construction. As shown above, the "correction" deed executed by the Halberts, after reciting the history of the transaction, clearly provides that the Halberts are selling and conveying to the Greens "an undivided 15/1987.4 interest in and to all of the royalty oil, royalty gas and royalty on other minerals" produced from Sections 63, 82 and 83 from October 29, 1952 to April 30, 1960. It clearly provides that the Greens are to receive said per cent of the royalty on minerals produced but that the Greens shall have no interest in any rentals or bonus paid on any future lease and that it shall not be necessary for them to join in the execution of any future lease. It further provided:

"It is further understood that the grantees' interest in said minerals is only a royalty interest * * *."

This instrument conveyed and purported to convey only a 15/1987.4 interest in the royalty in said three sections and it provides that said interest shall terminate on April 30, 1960. Mr. Green's claim that said "correction" deed conveyed to him 15 acres of minerals, as distinguished from royalty, cannot be sustained. Neither can Mr. Halbert's contention that the deed conveyed nothing be sustained.

█ Halbert had the burden of proving title to ⅛th of the minerals in the 3½ sections to sustain his suit in trespass to try title thereto. If conclusive proof of such ownership is in the record it has not been called to our attention. Halbert testified that he learned, after Cullum and McRimmon executed their mineral deed to him, that his grantors had only "term minerals" and that his ownership "would not be perpetuated by production." Whether that "term" has expired we do not know. In his "correction" deed to Green, Halbert said:

"And Whereas, by the terms of said deed dated October 29, 1952, an undivided interest in all of the minerals in, on or under or to be produced from said three sections of land was conveyed, *when as a matter of fact the only interest then owned in said lands by the grantor was a royalty interest.*" (Emphasis ours.)

█ It is evident that the Greens do not have title to the minerals claimed by them as a result of the execution of the "correction" deed and that by said two deeds from Halbert on February 27, 1953, they acquired only royalty. But, it is equally clear that Halbert has not shown that he has title to ⅛th of the minerals in said 3½ sections and, therefore, he was not entitled to judgment.

The judgment is affirmed.