A. T. HALBERT V. CONE GREEN ET UX.

No. A-5703. Decided October 3, 1956.
Rehearing Overruled October 31, 1956.
(293 S.W. 2d Series 848)

*Tom Gordon,* of Abilene, for petitioner.

The Court of Civil Appeals erred in holding paramount and superior title in the Greens when the only document evidence of title in them was the instrument in question, and in acquiesing in the error of the trial court in permitting parol testimony

regarding an unambiguous deed. Ritter v. Harris, 154 Texas 474, 279 S.W. 2d 845; Ross & Sensibaugh v. McClellan, 262 S.W. 2d 205, Refused N.R.E.; Patent v. Crews, 264 S.W. 2d 467, Refused N.R.E.

*Allison, Steele & Allison,* and *Earl R. Allison,* all of Levelland, for respondent.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Suit in trespass to try title was instituted by petitioner, A. T. Halbert, as plaintiff, against respondents, Cone Green and wife, as defendants, to recover an undivided 1/8th interest in the oil, gas and other minerals in, under and to be produced from Sections 63, 82 and 83, and the north ½ of Section 98, Block D, H. & T.C. Ry. Company survey in Stonewall County, Texas.

Trial was to the court without a jury, and at the conclusion of the evidence judgment was rendered and entered that plaintiff "take nothing." The Court of Civil Appeals affirmed. 285 S.W. 2d 767. A brief statement of the factual background is necessary to an understanding of the issues to be discussed.

On October 13, 1952, Mayme L. Cullum and Willard D. McRimmon executed a mineral deed which purported to convey to petitioner, Halbert, an undivided 1/8th interest in the minerals in the above-described three and one-half sections of land. On October 29, 1952, petitioner Halbert executed a mineral deed purporting to convey to respondents "an undivided 15/2000 interest in and to all of the * * * minerals in and under * * * an undivided 5/2000 interest in and under each of" Sections 63, 82 and 83.

The record discloses that when petitioner executed the mineral deed to respondents he was unaware that his grantors only owned and therefore conveyed to him a mineral estate for only a limited term. He, accordingly, was unaware that his deed to the respondents could and did convey a mineral estate for only a limited term. When these facts were discovered petitioner and respondents entered into negotiations which resulted in a settlement of their differences and in the execution of three other conveyances as follows: 1. A quit-claim deed executed by respondents, dated February 26, 1953, quit-claiming to petitioner all of respondents' "right, title and interest in and to oil, gas and other minerals" in Sections 63, 82 and 83, it being recited

in the deed that the conveyance was "a re-conveyance unto the said A. T. Halbert of all mineral rights of every nature and description acquired by us under a deed dated October 29, 1952 * * * and no other title is intended to be conveyed hereby in said land other than that acquired by us under the terms of said deed." 2. A warranty deed executed by petitioner and his wife, dated February 27, 1953, conveying to respondents an undivided 8/3313ths perpetual royalty interest in and to the oil, gas and other minerals in, under and to be produced from Sections 62, 63, 82, 83 and 98 in Block B, H. & T.C. Ry. Company survey. (It should be stated here that after the execution of the deed of October 29, 1952, and before the execution of the deed of February 27, 1953, petitioner bought a fraction of the royalty from production from Sections 62, 63, 82, 83 and 98.) 3. A deed executed by petitioner and his wife, dated February 27, 1953, which purported to convey to respondents a royalty interest of 15/1987.4 in and to the oil, gas and other minerals in, under and to be produced from Sections 63, 82 and 83, in Block D, H. & T. C. Ry. Company survey, such interest to terminate automatically on April 30, 1960. This deed is set out in full in the opinion of the Court of Civil Appeals. (285 S.W. 2d 768-770).

Petitioner does not question the validity or operative effect of the February 27th deed conveying to respondents an 8/3313ths perpetual royalty in the minerals produced from Sections 62, 63, 82, 83 and 98. Accordingly, we have and shall deal only with questions arising out of the deed of February 27th purporting to convey to respondents a term royalty of 15/1987.4 in Sections 63, 82 and 83, and this deed will hereafter be referred to as the February 27th deed.

As proof of his title petitioner introduced in evidence the deed from Mayme L. Cullum and Willard D. McRimmon to petitioner, the deed from petitioner to Cone Green and wife, dated October 29 ,1952, and the quit-claim deed from Cone Green and wife to petitioner, dated February 26, 1953. Respondents introduced the deed from petitioner to respondents, dated February 27, 1953.

The principal contention of petitioner in the Court of Civil Appeals and before this Court is that the deeds introduced in evidence by him established his title to 1/8th of the minerals in the three and one-half sections of land and that the February 27th deed did not operate to convey to the respondents any mineral interest of any character in and to the three sections of land, but operated "merely to correct the record." The trial

court and the Court of Civil Appeals concluded that the deed was effective and operative to convey to respondents 15 acres of royalty for a term ending in 1960.

■ The instrument is clear and unambiguous. It recites that A. T. Halbert and wife "have granted, bargained, sold and conveyed" and "by these presents do grant, bargain, sell and convey unto the said Cone Green and wife, Mattie Green * * * an undivided 15/1987.4 interest in and to all of the royalty oil, royalty gas and royalty on other minerals, in, on and under or that may be produced" from Sections 63, 82 and 83. We agree with the conclusion of the courts below. The instrument by its plain and unambiguous terms operates to convey a royalty interest to respondents. The interest so conveyed is limited by other language of the deed and terminates on April 30, 1960.

Petitioner seems also to contend—although certainly not clearly so—that whatever interest was conveyed by the February 27th deed vested in respondents as of October 29, 1952, the date of the original deed, and that such interest was revested in petitioner by the quit-claim deed executed by respondents on February 26, 1953. This contention requires a closer inspection of the February 27th deed.

The February 27th deed purports to be a correction deed. In a preamble it refers to the deed of October 29, 1952, and recites that that deed contained "a misdescription of the interest in said minerals in and under said land intended to be conveyed by said grantor to said grantees." After noting certain discrepancies, it recites that "it is the desire of all parties * * * that the above described conveyance * * * be corrected so as to show the true interest intended to be conveyed by such deed in accordance with the above statements." Following the granting clause is this language: "It is further expressly agreed and understood that this deed is in lieu of and in correction of and in substitution of the said deed dated October 29, 1952, to the said Cone Green and wife, and the terms and provisions of this deed and the grant and conveyances herein made shal be operative as of October 29, 1952, and retroactive to said date."

From the quoted recitals it seems clear that the February 27th deed was intended as a correction deed. Its purpose appears to have been to change the nature of the estate granted from an interest in the minerals to an interest in royalty, to change the fractional interest from a 15/2000 interest in and to the oil and gas in and under an undivided 5/2000 interest in

each of Sections 63, 82 and 83 to a 15/1987.4 interest in the royalty from the three sections, and to cut down the interest from one in perpetuity to a term interest ending in 1960. It thus appears that while the correction deed operated to enlarge the fractional interest of the estate in the three sections of land theretofore conveyed to respondents and to diminish its term, it, at the same time, changed completely the nature of the estate conveyed to and owned by the respondents.

■ The parties may have intended that the deed of October 29, 1952, convey a royalty interest but it did not do so. Any title to royalty acquired by respondents was acquired under the deed of February 27, 1953. This was an after-acquired title and, as a matter of law, did not pass under the quit-claim deed of February 26, 1953. Harrison v. Boring, 44 Texas 255, 263. Moreover, the wording of the quit-claim deed makes doubly certain that the royalty interest acquired under the February 27th deed did not pass. It was specifically provided in the quit-claim that it was a re-conveyance of the mineral rights acquired under the deed dated October 29, 1952, and that "no other title" was "intended to be conveyed * * * in said land other than that acquired * * * under the terms of said deed."

■ When respondents executed the quit-claim deed they may have had an equitable right to have the deed of October 29, 1952, reformed precisely as it was reformed by the February 27th deed, but that right did not pass under the quit-claim either. In Thompson on Real Property, Permanent Edition, Vol. 7, Section 3748, p. 222, we find the pertinent rule stated in this language: "The grantee's cause of action to reform the deed is personal to him, and not a covenant running with the land, and will not therefore, without apt words of assignment, pass to a purchaser from the grantee under a deed which describes the same land described in the deed to his grantor." The rule, as stated, is supported by Norris v. Colorado Turkey Honestone Co., 22 Colo. 162, 43 Pac. 1024.

■ There is one other question in the case: the effect of the "take nothing" judgment entered by the trial court.

Petitioner's general plea in trespass to try title and respondents' plea of not guilty put in issue the title to the entire 1/8th mineral interest, and the effect of the "take nothing" judgment was, as between the parties, to divest all title to the entire interest out of petitioner, Halbert, and to vest the same in respondents Green. Permian Oil Co. v. Smith, 129 Texas 413,

73 S.W. 2d 490, 107 S.W. 2d 564, 570, 111 A.L.R. 1175. Petitioner seems to feel that the judgment is erroneous because the evidence shows that respondents owned at most the royalty interests conveyed to them by petitioner by the two deeds of February 27, 1953. What petitioner overlooks is that his right to judgment for any part of the 1/8th mineral interest must rest wholly on the strength of his own title, to be tested by the proof, and not on the weakness of respondents' title. Kinney v. Vinson, 32 Texas 125; Kirby Lbr. Co. v. Conn, 114 Texas 104, 263 S.W. 902, 904, 41 Texas Jur. 497, Trespass to Try Title, Section 33. If petitioner is entitled to have the judgment reversed it must be because the record shows, as a matter of law, that petitioner owns all or a part of the 1/8th of the minerals sued for.

■ Mayme L. Cullum and Willard D. McRimmon were the agreed common source of title. The introduction in evidence of petitioner's deed from Cullum and McRimmon to 1/8th of the minerals, the deed from petitioner to respondents dated October 29, 1952, and the quit-claim deed from respondents to petitioner dated February 26, 1953, established petitioner's title to the 1/8th mineral interest, to be reduced and diminished by and to the extent of the royalty conveyed to respondents by petitioner's deeds of February 27, 1953, and to the extent of certain other royalty conveyed on November 16, 1953, to W. C. Kinser and wife, Carrie Lee Kinser, and Beatrice Ferle Edgar. In the absence of other controlling evidence, judgment should have been entered for petitioner accordingly. Rules 802 and 804, Texas Rules of Civil Procedure. But the Court of Civil Appeals affirmed the take nothing judgment on the ground that there was other controlling evidence. It pointed to petitioner's testimony that his grantors owned and therefore conveyed to him only term minerals, stating that there was no evidence to show whether the term had expired, and to a recitation in petitioner's February 27th deed to respondent that "the only interest then owned (October 29, 1952) in said lands by the grantor (petitioner) was a royalty interest." Our immediate question is whether these two items of evidence militated against petitioner's title. We think not.

In discussing this matter we will consider also a pertinent finding of fact made by the trial judge, as follows: "That on such date (October 29, 1952) the plaintiff did not own any minerals under the three sections of land, but was possessed only of term royalty to expire in April, 1960."

The only support for the trial court's finding that petitioner, on October 29, 1952, owned no minerals under the land but only term royalty is the recitation to that effect found in the correction deed, the same recitation accepted and used by the Court of Civil Appeals as tending to disprove petitioner's title to the 1/8th interest in the minerals. The recitation cannot be used to destroy petitioner's title. The deed from Cullum and McRimmon conveyed to petitioner "an undivided one-eighth (1/8) mineral ƒinterest in and to all of the oil, gas and other minerals in and under and that may be produced" from the three and one-half sections of land, "together with the rights of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said lands for oil, gas and other minerals * * *," subject to any existing lease, with the right to receive and enjoy the granted "undivided interest in and to all bonuses, rents, royalties and other benefits * * * precisely as if the grantee * * * had been at the date of the making of said lease the owner of a similar undivided interest in and to the lands above described * * * and grantee one of the lessors therein." In clear and unambiguous terms the deed conveyed to petitioner an undivided interest in the minerals in place. Richardson v. Hart, 143 Texas 392, 185 S.W. 2d 563. It is not suggested, and there is not the slightest evidence, that petitioner had otherwise disposed of any part of his mineral estate prior to the execution of the deed to respondents on October 29, 1952. It thus appears that the courts below have used the recitation in the February 27th deed to change and alter the unambiguous terms of the 1952 deed. The recitation is incompetent for that purpose, even if it be regarded as a construction of his own deed by petitioner. Richardson v. Hart, supra.

As observed by the Court of Civil Appeals petitioner testified that his grantors owned only "term minerals" and his evidence failed to disclose the length or date of expiration of the term. If the record does not reflect the continued existence of the term the Court of Civil Appeals was undoubtedly correct in stating that petitioner had failed to make proof of his title. It will be noted that the trial court found petitioner's estate would expire in April, 1960. The fact that the trial court was mistaken in its finding that petitioner owned only royalty would not alter or destroy its finding of the expiration date of the term estate. There is support for the finding in the testimony of respondent, Cone Green, who testified that in 1952 he bought perpetual minerals from petitioner but "found out it expired in 1960."

We are of the opinion that petitioner was entitled to judg-

ment for title to and possession of an undivided 1/8th interest in the minerals in place in Sections 63, 82, 83 and the North Half of Section 98, Block D, H. & T.C. Ry. Co. Surveys, for a term ending in 1960, as reduced and diminished by and to the extent of the royalty conveyed to respondents by petitioner's deeds of February 27, 1953, and to the extent of the royalty conveyed to Kinser and Edgar by the instruments shown in the record and dated November 16, 1953, and that respondents were entitled to judgment for the title to the royalty conveyed to them by petitioner by the deeds of February 27, 1953. This conclusion requires a reversal of the judgments of the courts below. The judgments of the courts below are reversed and the cause is remanded to the trial court with directions to enter judgment in accordance with this opinion.

Opinion delivered October 3, 1956.

Rehearing overruled October 31, 1956.