**MYRAD PROPERTIES, INC., Appellant,**

v.

**LASALLE BANK NATIONAL ASSOCIATION, as Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc.; Commercial Mortgage Pass–Through Certificates, Series 1997–C1; Robin Green; and Melissa Cobb, Appellees.**

No. 03–07–00240–CV.

Court of Appeals of Texas, Austin.

March 28, 2008.

Rehearing Overruled April 25, 2008.

---

Miguel S. Rodriguez, Taylor Dunham and Burgess, LLP, Austin, for Appellant.

Keith M. Aurzada, Powell Goldstein LLP, Dallas, for Appellees.

Before Justices PATTERSON, PURYEAR and PEMBERTON.

## OPINION

BOB PEMBERTON, Justice.

Myrad has filed a motion for rehearing. We withdraw our opinion, dissenting opinion and judgment issued on January 25, 2008, and substitute the following in its place. We overrule Myrad's motion for rehearing.

This is an appeal from a final summary judgment on claims arising from the non-judicial foreclosure of two apartment complexes that had secured a single note under a single deed of trust. The central issue in this case, presented in cross-motions for summary judgment, concerns the legal effect of an error in the notice of foreclosure sale: a definition of the "property" to be sold that incorporated a legal description of only one of the apartment complexes that secured the note, but not the other. We affirm the portions of the district court's judgment predicated on its resolution of this legal issue. However, because fact issues preclude summary judgment as to a declaratory claim that the debtor is entitled to a surplus, we must reverse this portion of the judgment and remand it for further proceedings.

## BACKGROUND

### Myrad's obligations and default

The following summary is taken from the undisputed summary judgment evi-

dence. In July 1997, the appellant, Myrad Properties, Inc., purchased two non-contiguous parcels of land in Killeen that each contained a multi-family apartment complex—La Casa Apartments and Casa Grande Apartments. The La Casa Apartment complex is the larger of the two, having 64 units, while Casa Grande has only 21 units. Myrad financed its purchase by executing a note in the amount of $1,050,000 payable to First Security Commercial Mortgage, L.P. (the Note). The Note was secured by a "Deed of Trust, Security Agreement, and Fixture Filing" (the Deed of Trust). The Deed of Trust covered "Property" defined to include, among other interests, the "Land"—"The real property described in Exhibit A–1 and A–2 attached hereto and made a part hereof." Exhibit A–1 is a metes and bounds description of the parcel on which the La Casa Apartments are located, while A–2 is a legal description of the Casa Grande parcel. The Deed of Trust further specified that the "Property" also included improvements, fixtures, personal property, and various other rights and interests related to the "Land." The Deed of Trust was recorded in the real property records of Bell County. In 1999, the Note and Deed of Trust were assigned to appellee LaSalle National Bank Association, as trustee for investors in a large pool of loans.[1] Since that time, LaSalle has been the mortgagee and holder of the Note.

The Note required Myrad to make monthly specified payments of principal and interest. If Myrad failed to make the required payments, the Note and Deed of Trust authorized LaSalle to assess late charges and to charge a higher default rate of interest until the default was cured. Other remedies included declaring the entire unpaid amount of the "Debt" immediately due and payable, which would include (1) the principal sum of the Note; (2) accrued interest, default interest, late charges, prepayment consideration, and "other sums" as provided in the Note, Deed of Trust, or other security documents; (3) "all other moneys agreed or provided to be paid" by the Note, Deed of Trust, or other security documents; (4) "all sums advanced" pursuant to the Deed of Trust "to protect and preserve the Property and the lien and security interest created thereunder"; and (5) "all sums advanced and costs and expenses incurred" by LaSalle "in connection with the Debt or any part thereof, any renewal, extension, or change of or substitution for the Debt or any part thereof, or the acquisition or perfection of the security therefore, whether made or incurred at the request of [Myrad] or [LaSalle]."

Under the Deed of Trust, Myrad also agreed that LaSalle would have the right to sell the "Property" through non-judicial foreclosure:

sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Grantor therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entity or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law as follows. The Trustee, his successor or substitute, is authorized and empowered and it shall be his special duty at the request of the Beneficiary to sell the Property or any part thereof ... at the courthouse of any county in the State of Texas in which any part of the Property is situated, at public venue to the highest bidder for cash between the hours of 10 o'clock

1. For simplicity, we will refer to this party simply as "LaSalle." We will also use "LaSalle" to refer to acts taken on its behalf by

Capmark Finance, Inc., its mortgage servicer, except where the distinction between these entities becomes relevant.

a.m. and 4 o'clock p.m. the first Tuesday in any month after having given notice of such sale in accordance with the statutes of the State of Texas then in force governing sales of real estate under powers conferred by a Deed of Trust....

Myrad subsequently defaulted on its payment obligations. On August 3, 2006, LaSalle, through its attorney, appellee Robin Green, issued to Myrad a notice of default, demand for immediate cure and notice of intent to accelerate the indebtedness due under the note. This document also referenced the correct book, page number and date of the recorded Deed of Trust, "covering the real and personal property more particularly described therein and commonly known as Casa Grande and LaCasa Apartments," and noting the street addresses of each apartment complex. Myrad admitted that it received this notice of default and was aware that it referenced both parcels. On August 29, 2006, LaSalle, through Green, issued to Myrad a notice of acceleration of the indebtedness due under the note. As with the notice of default, this document referenced the correct book, page number and date of the recorded Deed of Trust and the

names and street addresses of "Casa Grande and LaCasa Apartments." Myrad admitted receiving this document and was aware that it referenced both parcels.

On October 16, 2006, LaSalle filed, in the Bell County real property records, its Appointment of Substitute Trustees and Notice of Substitute Trustee's Sale for Tuesday, November 7, between the hours of 10:00 a.m. and 4:00 p.m., at the Bell County Courthouse. *See* Tex. Prop.Code Ann. § 51.002(a) (West 2007) ("A sale of real property under a power of sale conferred by a deed of trust ... must be a public sale at auction held between 10:00 a.m. and 4 p.m. on the first Tuesday of a month.... [T]he sale must take place at the county courthouse in the county where the land is located."). LaSalle also served Myrad with a copy of each document via certified mail and posted copies on the bulletin board outside the Bell County Clerk's office. *See id.* § 51.002(b) (requiring 21 days' notice of sale by posting "at the courthouse door," filing with the county clerk, and service on each debtor).

Because the contents and legal effect of the Notice of Substitute Trustee's Sale are at the center of the parties' dispute, we quote it at length:

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF TEXAS
COUNTY OF BELL

| | |
|---|---|
| *Date:* | October 6, 2006 |
| *Borrower:* | Myrad Properties, Inc., a Texas Corporation |
| *Borrower's Address:* | .... |
| *Holder:* | LaSalle National Bank Association, as Trustees for the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Commercial Mortgage Pass–Through Certificates, Series 1997–C1 |
| *Holder's Address:* | ... |
| *Mortgage Servicer:* | Capmark Finance, Inc. |

*Mortgage Servicer's Address:* . . .

*Substitute Trustees:* Robin Green, Melissa Cobb, Janice Wright, Kenneth Strickland, Juanita Strickland, and Gloria Tanguay or any of them acting alone[2]

*Substitute Trustees' Address:* Powell Goldstein LLP

. . . .

*Deed of Trust:* Deed of Trust, Security Agreement, and Fixture Filing

 Date: July 16, 1997

 Grantor: Myrad Properties, Inc., a Texas Corporation

 Lender: First Security Commercial Mortgage, L.P., a Delaware limited partnership

 Trustee: William Bradshaw

 Secures: Promissory Note ("Note") dated July 16, 1997, in the original principal amount of $1,050,000 executed by Grantor, payable to the order of Lender and currently held by Holder.

 Recording: Recorded July 16, 1997 in the Real Estate Records of Bell County, Texas (the "Records") in Volume 3645, Page 300.

*Property:* The real property described on Exhibit A attached hereto and made a part hereof for all purposes, together with all improvements and personal property described in the Deed of Trust.

The "Exhibit A" attached to the notice and incorporated into the definition of "Property," however, is a metes and bounds description of the Casa Grande parcel only.

The Notice of Substitute Trustee's Sale then states:

Holder, acting by and through Mortgage Services, has appointed Robin Green, Melissa Cobb, Janice Wright, Kenneth Strickland, Juanita Strickland, and Gloria Tanguay, and each of them acting alone, as Substitute Trustees under the Deed of Trust upon the contingency and in the manner outlined in the Deed of Trust and in accordance with Chapter 51 of the Texas Property Code.

Default has occurred pursuant to the provisions of the Deed of Trust. The indebtedness evidence by the Note is now wholly due. Holder, acting by and through Mortgage Servicer, has instructed Substitute Trustees, and each of them acting alone, to sell the Property toward the satisfaction of the Note.

The Deed of Trust may encumber both real and personal property. Notice is hereby given of Holder's election to proceed against and sell both the real property and any personal property described in the Deed of Trust in accordance with the Holder's rights and remedies under the Deed of Trust and

**2.** Green and Cobb, both appellees, are attorneys with Powell Goldstein; Wright is a legal assistant at the firm. The Stricklands and Tanguay were names provided by the service that Powell Goldstein or Capmark retained to perform the deed of trust sale.

Section 9.604 of the Texas Business and Commerce Code.

Notice is hereby given that on the Date of Sale, Substitute Trustees, or any one of them acting alone, will offer the Property for sale at public auction at the Place of Sale, to the highest bidder for cash, "AS IS". THERE WILL BE NO WARRANTY RELATING TO TITLE, POSSESSION OR QUIET ENJOY-MENT OR THE LIKE FOR THE PERSONAL PROPERTY INCLUDED IN THE SALE. Holder may bid by credit against the indebtedness secured by the Deed of Trust.

The notice was signed by Cobb.

On November 2, Myrad's bankruptcy counsel sent a letter to Cobb addressing various issues related to the foreclosure. The letter referenced "Property: Casa Grande and La Casa Apartments," and began, "With your foreclosure on the above-referenced real estate set next Tuesday...."

On November 7, Strickland conducted the substitute trustee's sale on the Bell County Courthouse steps. Strickland recited the date, book and page number where the Deed of Trust has been recorded in the Bell County real property records, then read the legal description of the Casa Grande but not the La Casa parcel. He then conducted the sale. Strickland, on behalf of LaSalle, made a credit bid $978,000, an amount that LaSalle had calculated based on the estimated amount of Myrad's debt as of the date of foreclosure.

LaSalle's credit bid was the sole bid at the sale. LaSalle was issued a Substitute Trustee's Deed, similar in form to the Notice of Substitute Trustee's Sale, that purported to convey to it the "Property," again defined as "[t]he real property described on Exhibit A attached hereto and made a part hereof for all purposes, to-

gether with all improvements and personal property described in the Deed of Trust." As with the Notice of Substitute Trustee's Sale, Exhibit A to the Substitute Trustee's Deed contained only a legal description of the Casa Grande parcel. This deed was recorded on the same day.

**Correction deed and underlying proceedings**

In the aftermath of the substitute trustee's sale, Myrad asserted the view that the Substitute Trustee's Sale and deed had conveyed only the Casa Grande Apartments to LaSalle and not the La Casa Apartments. On November 9, Myrad sued LaSalle, Green and Cobb seeking declarations under the Uniform Declaratory Judgments Act[3] that the substitute trustee's sale "did not act to convey any part of the La Casa Apartments"; that the sale (so viewed) "was a valid sale not subject to being set aside or otherwise collaterally attacked"; that by virtue of the sale, applying the sale price to Myrad's indebtedness results in the Deed of Trust being satisfied and extinguished; that applying the sale price to Myrad's indebtedness results in a surplus due and owing to Myrad; and that "LaSalle no longer has any legal or equitable interest in the La Casa Apartments." Myrad also sought injunctive relief to bar the appellees from filing any reformed or corrected deed purporting to assert any legal or equitable interest in the La Casa Apartments or otherwise interfering with its rights in the complex.

Myrad obtained a temporary restraining order but, on November 22, following an evidentiary hearing that is part of the summary-judgment record, the district court dissolved the TRO and denied Myrad's application for temporary injunction. On the same day, LaSalle filed a "Correction Substitute Deed." The Correction Substitute Deed was materially identical to

**3.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.001–.011 (West 1997 & Supp.2007).

the original Substitute Trustee's Deed except that it attached an "Exhibit A" that tracked the definition of "Property" from the Deed of Trust. That definition, again, explicitly encompassed both the Casa Grande and La Casa parcels, as well as improvements, fixtures, personal property, and various other rights and interests related to each parcel.

Thereafter, Myrad amended its petition to add claims for declarations that the " 'Correction Substitute Deed' is invalid or void and/or unenforceable" and that it is the owner of the La Casa Apartments. It also asserted a quiet title claim to set aside the Correction Substitute Deed, as well as claims for damages from Cobb's "breach of duty" as substitute trustee and conspiracy to do the same.[4]

The appellees counterclaimed for declarations that (1) the Substitute Trustee may file a corrective deed to include foreclosure of the La Casa Apartments; (2) the foreclosure sale was proper in all respects and had the effect of foreclosing Myrad's interests in both the Casa Grande Apartments and the La Casa Apartments; and (3) the Substitute Trustee's sale did not result in the Deed of Trust being satisfied and extinguished. In the event the court found the foreclosure sale was not properly conducted, LaSalle pled in the alternative for a declaration that it maintained all legal and equitable interests it was granted by the Deed of Trust and is entitled to re-conduct the foreclosure sale under Texas law. LaSalle also asserted counterclaims for reformation of the Substitute Trustee's Deed to include the La Casa Apartments, that the Substitute Trustees be authorized to rescind the Substitute Trustee's sale and conduct another sale, and that a receiver be appointed to manage the complexes pending resolution of its declaratory claims.

## Summary-judgment motions

The parties subsequently filed cross-motions for summary judgment. The appellees sought summary judgment, on both traditional and no-evidence grounds, on each of Myrad's claims. They also sought summary judgment on their counterclaims for declarations that the substitute trustee was authorized to file the correction deed, the foreclosure sale was sufficient to foreclose Myrad's interest in both the Casa Grande and La Casa Apartments, and that the substitute trustee's sale did not extinguish or satisfy the Deed of Trust. In the alternative, the appellees moved for summary judgment on their declaratory claim that if the sale was improperly conducted, LaSalle maintained all legal and equitable interest in both the Casa Grande and La Casa Apartments under the Deed of Trust and may rescind the sale and re-conduct the foreclosure.

Myrad sought summary judgment on claims for declarations that the Substitute Trustee's sale did not convey the La Casa Apartments, that this sale (so viewed) was valid and not subject to being set aside, and that the correction deed was invalid. It also sought summary judgment that "by virtue of the Substitute Trustee's Sale dated November 7, 2006, Myrad is entitled to a credit of $978,000," an element of its declaratory claim that the sale resulted in a surplus. Myrad also sought summary judgment, on both traditional and no-evidence grounds, on the appellees' claims for reformation of the Substitute Trustee's Deed or rescission of the substitute trustee's sale.

Following a hearing, the district court granted the appellees' summary-judgment motion "except for rescission" and denied Myrad's motion in its entirety. It ren-

---

**4.** Myrad also asserted its breach-of-duty and conspiracy claims against Strickland, but sub- sequently non-suited these claims against him.

dered final judgment declaring that the substitute trustee's sale had conveyed to LaSalle title to both the La Casa and Casa Grande Apartments, that the correction deed had vested title in LaSalle to the property described therein, and that Myrad should take nothing on its claims. Myrad appeals.

## ANALYSIS

In three issues on appeal, Myrad asserts that the district court erred in granting the appellees' summary-judgment motion and in denying its motion. Myrad's primary complaint is that the district court erred in granting summary judgment on the appellees' declaratory claims that the November 7, 2006 substitute trustee's sale had conveyed both the Casa Grande and La Casa Apartments and that the correction deed had vested title to both parcels in LaSalle. Relatedly, Myrad complains that the district court erred in denying summary judgment on Myrad's declaratory claims regarding the same issues, granting LaSalle's motion against those claims, and in granting summary judgment against Myrad's quiet title claim.

The cornerstone of Myrad's arguments is its contention that the foreclosure sale had the legal effect of conveying only the Casa Grande Apartments due to the erroneous property description incorporated into the Notice of Substitute Trustee's Sale and read by Strickland at the sale. So viewed, this transaction, Myrad adds, was accurately memorialized in the Substitute Trustee's Deed. Consequently, Myrad maintains, the correction deed was invalid and unenforceable because it purported to convey an entirely new estate rather than merely correcting a scrivener's error in the original deed. *See Halbert v. Green,* 156 Tex. 223, 293 S.W.2d 848, 851 (1956).

Myrad's premise regarding the legal effect of the foreclosure sale is also the foundation for the dissent's portrayal of the issues presented[5] and its assertions that LaSalle garnered a "windfall" from the sale[6] and unilaterally effected a separate conveyance merely by filing a correction deed.[7]

Myrad also contends that fact issues precluded the district court from granting summary judgment against its declaratory claim that the sale yielded a surplus and its claims that Cobb breached her duties as a substitute trustee and engaged in a conspiracy to do so.

**Standard of review**

We review the district court's summary judgment de novo. *Valence Operating Co.*

---

5. *See Myrad Properties, Inc. v. LaSalle Bank,* No. 03–07–00240–CV, 252 S.W.3d 605, 622 (Tex.App.-Austin Mar. 28, 2008, no pet. h.) (Patterson, J., dissenting) (asserting that "this case poses the questions whether (i) a lender, by referencing a deed of trust in the notice [of foreclosure sale], automatically expands the properties subject to the sale ... to include all of the properties contained in the deed of trust" without regard to the contents of the notice and authorizes the trustee "to unilaterally file a correction deed after the fact to enlarge the property subject to the sale").

6. *See id.* at 628–29 n. 10 ("Appellees have been granted a windfall and complete reprieve from their admitted failure to strictly comply with statutory notice requirements."),

632 (purporting "fidelity to the statutory requirements of non-judicial foreclosure").

7. *See id.* at 628 (accusing us of "render[ing] the Property description actually contained in the Notice meaningless"), 629 (urging that "a party unilaterally could file a correction deed to vest title in a separate piece of property regardless of whether the notice and sale as to the separate property complied with public notice requirements, a result that would circumvent and eliminate the statutory requirements"), 630 ("I would hold that a party cannot unilaterally file a correction deed to vest title in a separate piece of property that was not noticed in compliance with statutory requirements or specifically included in a non-judicial foreclosure sale.").

*v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). To prevail on a traditional motion for summary judgment, the moving party must prove that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). If the movant's motion and summary-judgment evidence establish its right to judgment as a matter of law, the burden shifts to the nonmovant to defeat summary judgment. The nonmovant then has the burden to respond to the motion and to present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Nixon,* 690 S.W.2d at 548. In deciding whether there exists a disputed fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as true, and we must resolve every doubt and indulge all reasonable inferences in the nonmovant's favor. *Id.* at 548–49.

A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial, and (2) the nonmovant fails to produce more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on those elements. Tex.R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex. 2003); *Perdue v. Patten Corp.,* 142 S.W.3d 596, 603 (Tex.App.-Austin 2004, no pet.).

A no-evidence summary judgment will be sustained when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch,* 118 S.W.3d at 751. We view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)). More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.* "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)).

When, as here, both parties move for summary judgment on overlapping legal issues and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.,* 136 S.W.3d 643, 648 (Tex. 2004).

The district court granted appellees' summary-judgment motion on two of their declaratory claims, rendering judgment declaring that the substitute trustee's sale had conveyed to LaSalle title to both the La Casa and Casa Grande Apartments and that the correction deed had vested title in LaSalle to both complexes. Because the appellees had the burden of proof on these claims, it had the summary-judgment burden of negating any genuine issue of mate-

rial fact and establishing that it is entitled to judgment on these claims as a matter of law. *See MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986). As for the claims on which Myrad had the burden of proof, because the appellees asserted both traditional and no-evidence summary-judgment grounds, they are entitled to judgment as a matter of law if either (1) the record contains no more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on one or more essential elements of Myrad's claims, *see Forbes Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 172 (Tex.2003), or (2) the summary judgment evidence disproves, as a matter of law, one of the essential elements of each of Myrad's claims. *See Little v. Texas Dep't of Crim. Justice,* 148 S.W.3d 374, 381 (Tex.2004).

**Effect and validity of substitute trustee's sale and correction deed**

■ We first address Myrad's contentions regarding the legal effect of the substitute trustee's sale and validity of the subsequent correction deed. The parties concur that our resolution of these issues turns on questions of law rather than disputed facts. We observe again that both LaSalle and Myrad sought summary judgment regarding these issues. Further, Myrad prays on appeal that we render judgment on its summary-judgment motion regarding these issues.

■ Although the summary-judgment evidence was undisputed that Myrad had actual notice that LaSalle was seeking to foreclose its lien on both the Casa Grande

and La Casa Apartments,[8] we agree with Myrad and the dissent that the Deed of Trust and section 51.002 of the property code required LaSalle to provide 21–day's prior notice of the foreclosure sale to both Myrad *and the public.* "The statutory notice provisions of section 51.002 seek to not only protect the debtor by affording him a lengthy notice period in which he may cure, but also adequately inform the third party public in order to maximize the likelihood of a profitable public sale at market value in which the debtor may recover his equity in his property." *Jasper Fed. Sav. & Loan Ass'n v. Reddell,* 730 S.W.2d 672, 674–75 (Tex.1987). Because a trustee's power to sell the property is derived from the deed of trust and statute, strict compliance with these requirements is considered a prerequisite to the trustee's right to make the sale. *See Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 768 (Tex.1983); *Childs v. Hill,* 20 Tex.Civ. App. 162, 49 S.W. 652, 653–53 (1898, no writ); *Texas Sav. & Loan Assoc. v. Seitzler,* 12 Tex.Civ.App. 551, 34 S.W. 348, 349 (1896, writ ref'd). In other words, noncompliance with these requirements can render a foreclosure sale void. *See id.*

■ The notice of the foreclosure sale must provide a description or other identification of the property to be sold. *See id.* Myrad's arguments are premised on the view that the substitute trustee's sale was invalid as a conveyance of both the Casa Grande and La Casa Apartments because the Notice of Substitute Trustee's Sale gave no notice complying with the Deed of Trust and section 51.002 that the La Casa

---

**8.** In addition to receiving notices of acceleration and default that referenced both complexes, Myrad's bankruptcy counsel sent the November 2 letter to Cobb referencing "Property: Casa Grande and La Casa Apartments" and acknowledging, "With your foreclosure on *the above-referenced real estate* set next Tuesday,...." (Emphasis added). On appeal, Myrad questions whether this letter "is a

clear indication that it was a statement made after an analysis of the notice of sale." Although Myrad is disputing that its counsel conceded the appellee's interpretation of the Notice of Substitute Trustee's Sale, it does not appear to contest that it had actual notice that LaSalle was seeking to foreclose Myrad's interests in both apartment complexes.

Apartments would be sold. Myrad emphasizes that the Notice of Substitute Trustee's Sale defined "Property" as "the real property described on Exhibit A attached hereto and made a part hereof for all purposes, together with all improvements and personal property described in the Deed of Trust," and that Exhibit A included a legal description only of the Casa Grande parcel. This "Property," Myrad further points out, is the object of the notice's subsequent operative statements that "Holder ... has instructed Substitute Trustees ... to sell the *Property* toward the satisfaction of the Note," and that "Notice is hereby given that on the Date of Sale, Substitute Trustees ... will offer the *Property* for sale at public auction at the Place of Sale, to the highest bidder for cash." *Cf. Williams v. J. & C. Royalty Co.*, 254 S.W.2d 178, 180 (Tex.Civ.App.-San Antonio 1952, writ ref'd) (discussing use of defined terms in contracts).

But, as the appellees observe, the Notice of Substitute Trustee's Sale also included the following statement:

> The Deed of Trust may encumber both real and personal property. Notice is hereby given of Holder's election to proceed against and sell both *the real property* and any personal property *described in the Deed of Trust* in accordance with the Holder's rights and remedies under the Deed of Trust and Section 9.604 of the Texas Business and Commerce Code.

(Emphasis added). Myrad insists that a reasonable person would understand this language to be an election of remedies under section 9.604 that provides no infor-

mation regarding what real or personal property would be sold.[9] We disagree. These statements unequivocally notify the reader that LaSalle would be proceeding against and selling *the* real property and any personal property *described in the Deed of Trust*. The real and personal property described in the Deed of Trust included both the Casa Grande and La Casa parcels, and any improvements, fixtures, personal property, and various other rights and interests related to them. Other portions of the Notice of Substitute Trustee's Sale provide detailed information regarding the Deed of Trust, including where it was recorded. These components of the Notice of Substitute Trustee's Sale provide notice sufficient under the Deed of Trust and section 51.002 that both the Casa Grande and La Casa Apartments would be sold. *See Miller v. Gibralter Sav. & Bldg. Ass'n*, 132 S.W.2d 606, 608 (Tex.Civ.App.-Beaumont 1939, writ dism'd judgm't cor.) (reference in notice to recording date of the deed of trust is sufficient because it provides prospective bidders with "means of complete information").

▇▇▇ Myrad insists that any reader put on inquiry notice by the notice's cross-references to the Deed of Trust would review that instrument and ascertain that it permits LaSalle to "sell for cash or upon credit the Property [defined therein as both apartments complexes] *or any part thereof* ... at one or more sales, *as an entity or in parcels*." (Emphasis added). From this, Myrad suggests, a reasonable person would conclude that LaSalle was foreclosing on only the Casa Grande Apartments.[10] However, the fact that La-

---

**9.** Section 9.604 of the business & commerce code provides that where a security agreement covers both personal and real property, a secured party may proceed either under the U.C.C. as to the personal property alone or against both in accordance with its rights with respect to the real property. *See* Tex. Bus. & Com.Code Ann. § 9.604 (West 2002).

**10.** In support of these contentions and others, Myrad places great emphasis on "expert opinions" in an affidavit it obtained from a real estate attorney. This testimony includes the

Salle had the *right* to partially foreclose that Property—or to foreclose on all of that Property, for that matter—would imply nothing about which of these remedies it had elected. That information would instead come from the notice itself, which advised the reader that LaSalle would sell the real property and any personal property described in the Deed of Trust.

The problem with the Notice of Substitute Trustee's Sale, in other words, is not the absence of *any* notice that both the Casa Grande and La Casa Apartments would be sold, but that the notice is internally inconsistent regarding what property would be sold. Texas courts have not regarded similar inconsistencies in foreclosure sale property descriptions to be fatal. *See Mercer v. Bludworth,* 715 S.W.2d 693 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). *Mercer* involved a trespass-to-try-title action in which a party's title claim rested upon the validity of a foreclosure sale. The notice of trustee's sale had "identified a different date of the deed of trust and an incorrect recording reference," but included a correct metes and bounds description of the property and also correctly named the trustee. The court held that the error and inconsistency in the notice did not render the sale invalid. In relevant part, it reasoned that "[a]nyone interested in bidding at the sale could readily have contacted the trustee to clear up any confusion that may have been

created by the notice." *Id.* The Notice of Substitute Trustee's Sale here presents merely the converse: it provides an *inaccurate* metes and bounds description of the property to be sold but a *correct* citation to the deed of trust, identifies the Substitute Trustees, and provides detailed contact information. As in *Mercer,* the notice here enabled prospective bidders to readily contact the substitute trustees to "clear up any confusion that may have been created by the notice." We conclude that the erroneous and inconsistent property description in the Notice of Substitute Trustee's Sale does not constitute a failure to comply with the requirements of section 51.002 and the Deed of Trust with respect to the foreclosure sale of the La Casa Apartments.

■ A foreclosure sale may also be rendered invalid based on affirmative acts by the mortgagee that deter or "chill" bidding and adversely affect the sale price. *See Pentad Joint Venture v. First Nat'l Bank of LaGrange,* 797 S.W.2d 92, 95–96 (Tex.App.-Austin 1990, writ denied). Myrad appears to assert such a theory, contending that erroneous property description would have confused or deterred any prospective bidders interested in purchasing both the Casa Grande and La Casa Apartments. At least one court has held that, under Texas law, a similar underinclusion of property in a notice of foreclo-

---

attorney's opinions regarding the proper interpretation and legal effect of the Notice of Substitute Trustee's Sale and other instruments. Such opinions have no probative value and can neither support nor defeat summary judgment. *Cf. Akin v. Santa Clara Land Co.,* 34 S.W.3d 334, 339 (Tex.App.-San Antonio 2000, pet. denied) (holding that expert testimony offered to interpret the terms of a lease agreement was properly excluded because its construction or interpretation presented a question of law for the court); *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.,* 3 S.W.3d 112, 134 (Tex.App.-Corpus

Christi 1999, pet. denied) (holding expert testimony giving legal conclusions concerning interpretation of contract had no probative value and was properly excluded). Although LaSalle did not object to this affidavit below, failure to object or obtain a ruling on a substantively defective summary-judgment affidavit does not waive the substantive defect. *See Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.,* 227 S.W.3d 876, 884 (Tex.App.-Dallas 2007, no pet.). However, we have considered the arguments asserted in the affidavit as an extension of Myrad's briefing.

sure sale could be actionable under such a theory. *See Resolution Trust Corp. v. Summers & Miller Gleneagles Jt. Venture,* 791 F.Supp. 653, 654–55 (N.D.Tex.1992) (Texas law). That case involved a deficiency claim in which the debtor, in defense, challenged the validity of the foreclosure sale. The notice of foreclosure had erroneously transposed the legal descriptions of two properties that were to be foreclosed in a manner that resulted in "an offer of more land for sale than was actually the case as to one tract, and an offer of less land for sale than was actually the case as to the other tract." In the court's view, there was "no question that an irregularity in the foreclosure process occurred." *Id.* at 654–55.

■ We conclude that the inconsistent property description incorporated into the Notice of Substitute Trustee's Sale is the sort of irregularity in the foreclosure process that could potentially have some propensity to confuse or deter potential bidders interested in purchasing both the Casa Grande and La Casa Apartments. Cobb, in fact, admitted during her deposition that the property description was "potentially" misleading. For the substitute trustee's sale of both the Casa Grande and La Casa Apartments to be invalid under a

"chilled bidding" theory, however, Myrad also had the burden of proving that (1) the price or consideration received in the sale was grossly inadequate, and (2) such inadequacy was caused by the complained-of irregularity. *Id.* at 655; *see also American Sav. & Loan Assoc. of Houston v. Musick,* 531 S.W.2d 581, 587 (Tex.1975).[11] Perhaps limited by its theory that the substitute trustee's sale conveyed only the Casa Grande Apartments, Myrad does not contend that there is any evidence that the Casa Grande and La Casa Apartments were sold for a grossly inadequate price.[12] Nor does Myrad present a fact issue that any potential bidders were actually deterred by the erroneous property description. The sole competent evidence that Myrad cites regarding the effect of the error is Strickland's deposition testimony that on the date of sale, he had gone to the Bell County Courthouse to sell more than one property, that there were persons present bidding on other sales he had conducted there, that there were persons present at the sale of the Myrad property that were potential bidders, and that no one other than LaSalle bid on the property.[13] This evidence is legally insufficient to support the inference that the other "potential bidders" were actually deterred

---

**11.** *Cf. Charter Nat'l Bank–Houston v. Stevens,* 781 S.W.2d 368, 371–74 (Tex.App.-Houston [14th Dist.] 1989, writ denied) (contrasting this general rule with exception applicable where mortgagee deliberately chilled bidding and injured mortgagor seeks damages rather than to set aside the sale).

**12.** Nor would the price LaSalle paid at the sale—$975,000, bid as a credit against Myrad's outstanding debt—be grossly inadequate. La Salle's appraiser testified that the Casa Grande and La Casa Apartments were collectively worth between $1,170,000 and $1,180,000. However, in his November 2, 2006 letter, Myrad's bankruptcy counsel represented that an appraiser "has valued the properties at almost double what your client(s) has asserted is owed." Accepting

this statement as true, the sale price here is still proportionately much greater than those held not to be grossly inadequate in cases involving similar errors in property descriptions. *See Diversified Developers, Inc. v. Texas First Mort. Reit,* 592 S.W.2d 43, 45–46 (Tex. Civ.App.-Beaumont 1979, writ ref'd n.r.e.) (overruling contention that consideration was grossly inadequate where appraised value of property was $4 million and sale price was $2.5 million, the outstanding amount of the original $6 million debt).

**13.** This is the sole evidence in the summary-judgment record that there were "potential bidders" or that "third parties attended the foreclosure sale." *See* 252 S.W.3d at 605, 631 n. 15 (Patterson, J., dissenting).

from bidding by the erroneous property description. *See Summers & Miller Gleneagles Jt. Venture,* 791 F.Supp. at 655; *see also Diversified Developers, Inc. v. Texas First Mort. Reit,* 592 S.W.2d 43, 45–46 (Tex.Civ.App.-Beaumont 1979, writ ref'd n.r.e.) (similarly upholding directed verdict against claim to invalidate foreclosure sale on basis that previously-released property had been erroneously included in foreclosure notice; finding no evidence that erroneous property description had caused a grossly inadequate price or that any prospective bidder was prevented or deterred from bidding at the trustee's sale); *City of Keller v. Wilson,* 168 S.W.3d 802, 813 (Tex. 2005) ("when the circumstances are equally consistent with either of two facts, neither fact may be inferred"); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 858 (Tex.1968) (noting that "a vital fact may not be established by piling inference upon inference").[14]

We hold that the appellees established, as a matter of law, that the Notice of Substitute Trustee's Sale gave legally sufficient notice that both the Casa Grande and La Casa Apartments would be sold at the foreclosure sale and that the appellees conclusively negated any fact issue as to whether any irregularity rendered that sale invalid. We similarly hold that the appellees met their burden regarding the substitute trustee's sale itself. The summary-judgment evidence is undisputed that Strickland recited the date, book and page number where the Deed of Trust has been recorded in the Bell County real property records, then read the legal description of the Casa Grande but not the La Casa parcel. This notice parallels that given in the Notice of Substitute Trustee's Sale.

We accordingly hold that the district court did not err in granting summary judgment on the appellees' declaratory claim that the substitute trustee's sale had conveyed to LaSalle title to both the La Casa and Casa Grande apartments.[15] It is undisputed that the original Substitute Trustee's Deed did not accurately reflect that conveyance. Consequently, the district court did not err in granting summary judgment on appellees's declaratory claim that the correction deed vested title to both parcels in LaSalle. *See Adams v. First Nat'l Bank of Bells/Savoy,* 154 S.W.3d 859, 871 (Tex.App.-Dallas 2005, no pet.). Summary judgment was likewise appropriate on Myrad's overlapping declaratory claims and its quiet title action. As noted, Myrad's assertions to the contrary, as well as those of the dissent, are predicated on their incorrect views that the substitute trustee's sale conveyed only the Casa Grande Apartments.

**"Breach of duty" and conspiracy**

 Myrad also asserts that it has raised a fact issue precluding summary judgment on its claims against Cobb for damages for "breaching duties" as a substitute trustee and conspiring to do so. The appellees contend that summary judgment was appropriate on these claims for the same reasons that it was appropriate regarding the validity of the substitute

14. These principles are dispositive of whatever implications the dissent draws from Myrad's claims of equity in the property. *See id.* at 628–29 n. 10.

15. We express no opinion regarding whether, if the foreclosure sale had been invalid as a conveyance of both the Casa Grande and La Casa Apartments, it would nonetheless have the legal effect of conveying only the Casa Grande Apartments, as Myrad contends, or would have rendered the entire sale invalid. *See Shearer v. Allied Live Oak Bank,* 758 S.W.2d 940, 942 (Tex.App.-Corpus Christi 1988, writ denied) ("Because the foreclosure sale was void, th[e] debt is revived and considered outstanding.").

trustee's sale and correction deed. We agree with the appellees.

■ As the appellees observe, a trustee or substitute trustee appointed under a deed of trust to exercise a right of sale has a duty only to conduct the sale in compliance with the Deed of Trust and to avoid affirmatively deterring prospective bidders by acts or statements made before or during a foreclosure sale. *See First State Bank v. Keilman,* 851 S.W.2d 914, 921 (Tex.App.-Austin 1993, writ denied). These are the same duties that underlie Myrad's theory that the foreclosure sale was invalid to the extent that it purported to convey both the Casa Grande and La Casa Apartments. Myrad's "breach of trustee's duty" claim for damages, in substance, is merely the alternative remedy available where a foreclosure sale violates section 51.002 or the deed of trust, or chills bidding so as to cause a grossly inadequate sale price—a claim for wrongful foreclosure damages. *See Pentad Joint Venture,* 797 S.W.2d at 96.[16] Summary judgment on Myrad's "breach-of-trustee's duties" claim is, therefore, appropriate for the same reasons. And, because this holding negates the element of an "unlawful action" or "unlawful means" necessary for Myrad to prevail on its conspiracy claim, *see Keilman,* 851 S.W.2d at 925, summary judgment was appropriate on that claim as well.

## Surplus

■ Finally, Myrad asserts that it has raised a fact issue regarding its claim to a declaration that LaSalle owes it a surplus. Because the amount of LaSalle's successful credit bid—$978,000—is undisputed, Myrad's challenge turns on whether it has raised a fact issue regarding whether its indebtedness at the time of foreclosure

was less than the bid amount. We note again that LaSalle moved for no-evidence summary judgment on this issue, placing the burden on Myrad to raise a fact issue regarding each element of its claim.

We observe that the amount of Myrad's indebtedness to LaSalle is a function of the Note, the Deed of Trust, and the other loan and security documents. Under these instruments, Myrad's "debt" is defined as (1) "the payment of the indebtedness evidenced by the Note"; (2) "the payment of interest, default interest, late charges, and other sums provided in the Note, this Security Instrument or the Other Security Documents"; (3) "the payment of all other monies agreed to or provided to be paid by Grantor in the Note, this Security Instrument or the Other Security Documents"; (4) "the payment of all sums advanced pursuant to this Security Instrument to protect and preserve the Property and the lien and the security interest created hereby"; and (5) "the payment of all sums advanced and costs and expenses incurred by [LaSalle] in connection with the Debt or any part thereof, any renewal, extension, or charge of or substitution for the Debt or any part thereof, or the acquisition or perfection of the the the security therefore, whether made at the request of [Myrad] or [LaSalle]." LaSalle contends that Myrad's debt at the time of foreclosure was $986,495.78, itemized as follows:

| | |
|---|---|
| Unpaid principal: | $796,313.50 |
| Accrued interest (at note rate): | 45,788.03 |
| Additional interest (at default rate): | 36,497.70 |
| Prepayment charges: | 88,457.22 |
| Outstanding late charges: | 5,057.47 |
| Property protection advances: | 20,337.58 |
| Quote revision fee & misc. charges: | 170.00 |
| Total projected due as of Nov. 7, 2006: | $992,621.50 |
| Reserves and suspense | <6,126.02> |

---

16. *Cf. Charter Nat'l Bank–Houston,* 781 S.W.2d at 371–74 (recognizing exception where mortgagee deliberately chilled bidding and injured mortgagor seeks damages rather than setting aside the sale).

Net amt. proj. due as of Nov. 7, 2006: $986,495.78 [17]

Myrad disputes the following components of LaSalle's calculation:

- A $9,004 charge to Myrad's insurance escrow, apparently reflected in LaSalle's "Reserves and Suspense" line item, which was made to purchase coverage on the property a few days before foreclosure. Myrad adduced summary-judgment evidence that the premiums were refunded by the carrier on the day after foreclosure.
- $13,516 of the "property protection advances," which, Myrad contends, "did nothing to protect the apartments." [18]
- Various $50 charges for "miscellaneous" fees, totaling "at least $600," which Myrad claims were "improperly charged" to its outstanding loan amount.
- Myrad claims that LaSalle improperly failed to credit its reserve accounts with interest.[19]

We conclude that Myrad has raised a fact issue regarding the existence of a surplus. Specifically, Joe Vickery, Capmark's officer who oversaw the foreclosure on behalf of LaSalle, testified that he authorized the $9,004 advance for insurance a few days before foreclosure, yet acknowledged that the carrier refunded that amount on the day after foreclosure. This evidence raises a fact issue as to whether LaSalle actually incurred the insurance charge that it purported to charge to Myrad and include in its debt.

LaSalle argues that any dispute regarding the insurance charge is moot because it stipulated, for purposes of the summary-judgment proceeding, that it would waive any deficiency claim to the difference between the $986,495.48 it calculated as Myrad's debt and its $978,000 credit bid. We disagree. If the disputed insurance charge is excluded from LaSalle's $986,495.48 debt calculation—and Myrad has raised a fact issue as to whether it should be—its total debt, based on LaSalle's calculations, would be only $977,491.48. This figure is less than the amount of the credit bid. Consequently, Myrad has presented a fact issue regarding the existence of a surplus.

Myrad has also presented summary-judgment evidence raising a fact issue as to whether LaSalle violated its obligations under the loan documents to deposit My-

---

17. Prior to the temporary injunction hearing, Joe Vickery of Capmark submitted an affidavit containing calculations that correspond to these.

| | |
|---|---|
| Principal: | $796,313.50 |
| Interest: | 45,788.03 |
| Default interest: | 36,497.70 |
| Other applicable charges: | 107,896.25 |
| | $986,495.48 |

The $107,896.48 of "other applicable charges" matches the sum of prepayment charges ($88,457.22), outstanding late charges ($5,057.47), property protection advances ($20,337.58), and "quote revision fee and misc. charges" ($170), net of reserves and suspense ($6,126.02) as reflected in the revised Conditional Statement.

18. Myrad complains that LaSalle charged it for three appraisals of the apartments in the amounts of $500, $5,200 and $950. It also takes issue with charges for environmental assessments—$2,615 and $2,351—plus a $1,900 charge for review of those assessments. Myrad does not appear to challenge the remaining component of the property protection advances, a $6,817.58 charge for legal expenses.

19. Myrad does not quantify the amount of interest it claims it is owed on its reserve accounts. Excluding only the $9,004 in challenged insurance payments, $13,517 in disputed property protection advances, and Myrad's estimated $600 in "improperly charged" miscellaneous fees from LaSalle's calculation of Myrad's debt would yield a total debt of approximately $963,375. In other words, Myrad is claiming a surplus of approximately $14,600 (the 978,000 credit bid less $963,375), plus whatever amount of interest it claims to be owed on its reserve accounts.

rad's reserve or escrow funds in interest-bearing accounts. In particular, Myrad presented statements reflecting debits and credits to its loan amount that did not contain any credits for interest. LaSalle did not attempt to present summary-judgment evidence establishing that it had actually credited Myrad for interest earned on its reserve or escrow accounts. On this record, we must conclude that Myrad has raised a fact issue regarding its entitlement to this interest, which would further bear on the amount of any surplus.

For these reasons, we conclude that Myrad has presented a fact issue as to whether it is owed a surplus. We sustain its issue.

## CONCLUSION

We affirm the judgment of the district court in part and reverse in part. We affirm the court's final summary judgment declaring that the substitute trustee's sale had conveyed to LaSalle title to both the La Casa and Casa Grande apartments and that the correction deed had vested title in LaSalle to the property described therein. We also affirm the district court's take-nothing summary judgment against Myrad's claims with the exception only of its declaratory claim regarding a surplus. We reverse the district court's summary judgment on that claim and remand for further proceedings consistent with this opinion.

Dissenting Opinion by Justice
PATTERSON.

JAN P. PATTERSON, Justice, dissenting.

On motion for rehearing, I substitute the following opinion in place of my original dissenting opinion issued January 25, 2008.

The role of the courts is but a limited role when called upon to render a trial unnecessary. In the context of a non-judicial foreclosure sale and a public notice of the sale that contained no error on its face that one piece of property was to be sold, this case poses the questions whether (i) a lender, by referencing a deed of trust in the notice, automatically expands the properties subject to the sale as expressly identified in the notice to include all of the properties contained in the deed of trust—not just the property identified in the notice, and (ii) by referencing the deed of trust in the notice, the trustee and purchaser at the foreclosure sale are authorized to unilaterally file a correction deed after the fact to enlarge the property subject to the sale.

Because the majority drifts from the function of summary judgment and invades the province of the trier of fact in answering these questions, I respectfully dissent. As there are genuine issues of material fact that should preclude summary judgment, I would reverse and remand to the trial court for further proceedings.

### Factual and Procedural Background

In 1997, appellant Myrad Properties, Inc. financed two apartment complexes—the Casa Grande Apartments and the La Casa Apartments—through a $1,050,000 promissory note (the "Note").[1] Myrad executed a Deed of Trust, Security Agreement and Fixture Filing ("Deed of Trust") on both properties to secure the Note, and the Deed of Trust was recorded in the real property records of Bell County. The Deed of Trust defined the real property that was pledged by attaching and incorporating Exhibits A–1 and A–2. Exhibit A–1 contained the metes and bounds description for the La Casa property, and Exhibit

---

1. The properties are located over one mile away from each other.

A–2 contained the metes and bounds description for the Casa Grande property.

Myrad made payments under the Note for approximately eight years, totally approximately $960,000, but beginning in December 2005, Myrad failed to make timely payments on the Note. Appellee LaSalle Bank National Association was the holder of the Note at that time. In the event of a default by Myrad, the parties agree that the Deed of Trust gave LaSalle the right to non-judicial foreclosure and the right to sell the properties separately or together:

> ... sell for cash or upon credit the Property or any part thereof ..., pursuant to power of sale or otherwise, at one or more sales, as an entity or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law....

In October 2006, LaSalle exercised its right to foreclose, and after providing demand and notice of acceleration referencing both properties, LaSalle proceeded with non-judicial foreclosure under the Deed of Trust by filing an Appointment of Substitute Trustee and Notice of Substitute Trustee's Sale (the "Notice") in Bell County. Both documents defined the property to be sold by referring to "Exhibit A" that was attached to the documents:

> The real property described on *Exhibit A* attached hereto and made a part hereof for all purposes, together with all improvements and personal property described in the Deed of Trust.

Exhibit A contained the metes and bounds property description for the Casa Grande property and not for the La Casa property. The Notice also stated that LaSalle, as holder of the Note, was electing to proceed against both the real and personal property described in the Deed of Trust:

> The Deed of Trust may encumber both real and personal property. Notice is hereby given of Holder's election to proceed against and sell both the real and

personal property described in the Deed of Trust in accordance with the Holder's rights and remedies under the Deed of Trust and Section 9.604 of the Texas Business and Commerce Code.

The law firm of Powell Goldstein LLP was engaged to represent LaSalle on the Myrad foreclosure. Appellee Melissa Cobb, an attorney with that firm, prepared the foreclosure documents for LaSalle, and appellee Robin Green was her supervising attorney. Cobb and Green, as well as Kenneth Strickland, were appointed substitute trustees.

Strickland conducted the non-judicial foreclosure sale on November 7, 2006. The parties dispute whether Strickland's recitation at the sale was sufficient to give notice that both the La Casa property and the Casa Grande property were being sold. There was evidence that potential bidders were present at the sale, but that LaSalle was the only bidder on the property with a credit bid of $978,000. LaSalle provided evidence that the bid price was calculated based on the Note's unpaid principal balance, plus accrued interest, late charges, and expenses incurred. The parties dispute whether the credit bid exceeded the amount Myrad owed under the Note and the value of the properties at the time of the foreclosure. On the same day as the foreclosure sale, Strickland executed the Substitute Trustee's Deed and had it recorded in the real property records of Bell County. The Substitute Trustee's Deed recited the conveyed property by referencing Exhibit A, which exhibit contained only the property description for the Casa Grande Apartments.

Two days after the foreclosure sale, Myrad filed suit against appellees and obtained a temporary restraining order prohibiting appellees from filing a reformed or correction deed without court order or Myrad's consent. Myrad sought declaratory relief from the trial court that the appel-

lees' notice of foreclosure and the non-judicial foreclosure sale did not include the La Casa property. After the trial court dissolved the temporary restraining order, appellees directed Strickland to file a "Correction Substitute Trustee's Deed" ("Correction Deed") to "correct the property description," attaching a revised Exhibit A, which included the metes and bounds description for both the Casa Grande and the La Casa properties as well as additional provisions addressing easements, improvements, fixtures, personal property, and other property interests. After Strickland filed the Correction Deed, Myrad amended its pleadings, additionally seeking a declaration from the trial court that the Correction Deed was invalid and unenforceable.

Both sides thereafter filed summary judgment motions pursuant to Texas Rules of Civil Procedure 166a(c) and 166a(i). Myrad sought a partial summary judgment pursuant to rule 166a(c) on the following claims for declaratory judgment: (1) the foreclosure sale was valid, (2) the foreclosure sale did not convey any part of the La Casa Apartments, (3) Myrad was entitled to a credit of $978,000 against its obligations under the Note as of the date of the foreclosure sale, and (4) the Correction Deed was invalid or void or unenforceable.[2] Myrad also sought summary judgment on appellees' claims for reformation and rescission of the Substitute Trustee's Deed.

Appellees sought summary judgment pursuant to 166a(c) on their claims for declaratory relief that the substitute trustee was entitled to file the Correction Deed that included the foreclosure of the La Casa property or, in the alternative, that LaSalle maintains all legal and equitable interest in the properties under the Deed of Trust and the foreclosure sale did not result in the Deed of Trust being satisfied and extinguished. Appellees further sought summary judgment pursuant to 166a(c) and 166a(i) on Myrad's claims for declaratory relief, suit to quiet title, breach of trustee's duty, and conspiracy to breach the trustee's duty.

The summary judgment evidence included deposition excerpts, documents and correspondence between the parties, and the transcript from the temporary injunction hearing. Myrad also provided the affidavit of Dan Nelson, an attorney practicing in the area of real estate for approximately twenty-five years. Nelson testified concerning the customary preparation and posting of notices and conducting non-judicial foreclosure sales. Based on his review of the foreclosure documents and testimony as to the foreclosure sale, it was Nelson's opinion that the real property included in the Notice and the Substitute Trustee's Deed was the real property known as the Casa Grande Apartments. He further concluded that if the lender's intent was to foreclose on both the La Casa and Casa Grande properties that the Notice "would be misleading to a reader." Appellees did not object to Nelson's affidavit as summary judgment evidence.[3]

---

**2.** In addition to its declaratory claims on which it sought summary judgment, Myrad's other pleaded claims for declaratory relief are that the Deed of Trust was satisfied and extinguished by the credit bid, that there is a surplus owed to Myrad, that LaSalle no longer has a legal or equitable interest in the La Casa Apartments, and that Myrad is the owner of the La Casa Apartments. Myrad also sought an accounting of the reserve and es-

crow amounts held by LaSalle on Myrad's behalf.

**3.** Although appellees did not object in the trial court, appellees argue on appeal that Nelson's opinions were inadmissible because they constitute conclusory and, therefore, inadmissible evidence. *See Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex.1997). The majority concludes that Nelson's affidavit is of no pro-

After a hearing on the competing motions, the trial court denied Myrad's motion and granted appellees' motion, except as to rescission, and entered a final summary judgment order that conveyed the La Casa and Casa Grande properties to LaSalle as of November 7, 2006, ruling as a matter of law that the foreclosure sale included both properties and that the Correction Deed vested title in both properties. Myrad's appeal of the trial court's ruling followed.

## ANALYSIS

The majority affirms the trial court by concluding that the public notice of the non-judicial foreclosure was legally sufficient, as a matter of law, to include the two separate pieces of property in the foreclosure sale and that appellees negated any fact issue whether any irregularity rendered the sale invalid. The majority also affirms the trial court's denial of Myrad's claims including Myrad's breach of trustee's duty and conspiracy claims but, finding a fact issue that precludes summary judgment, reverses and remands for further proceedings as to Myrad's declaratory claim that it is entitled to a surplus.

### Trial Court's Declarations on Notice and Correction Deed

The majority affirms the trial court's declarations that the foreclosure sale conveyed title to the La Casa and the Casa Grande properties in LaSalle and that the Correction Deed vested title in the properties in LaSalle by concluding that the public notice of the foreclosure sale, while "internally inconsistent regarding what property would be sold," complied with section 51.002 of the property code and the Deed of Trust as a notice for both properties.[4]

Under the Uniform Declaratory Judgment Act, a court of record within its jurisdiction has the power to declare rights, status and other legal relations. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.003(a) (West 1997). To obtain a declaratory judgment, a party must show that a real controversy exists between the parties, and that the entire controversy may be determined by a judicial declaration. *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex.1995). In a declaratory judgment action, "the party asserting the affirmative of the controlling issues" bears the burden of proof. *Graff v. Whittle,* 947 S.W.2d 629, 634–35 (Tex.App.-Tex-

---

bative value and that it can neither support nor defeat summary judgment, but states that it has considered the affidavit as an "extension" of Myrad's briefing. Although appellees have not waived substantive complaints concerning Nelson's affidavit, *see* Tex.R. Civ. P. 166a(f); *Mathis v. Bocell,* 982 S.W.2d 52, 58–60 (Tex.App.-Houston [1st Dist.] 1998, no pet.), I would conclude that Nelson's affidavit constitutes competent summary judgment evidence. *See* Tex.R. Civ. P. 166a(c); Tex.R. Evid. 702; *Garner v. Long,* 106 S.W.3d 260, 268 (Tex.App.-Fort Worth 2003, no pet.) (expert affidavit may be competent summary judgment evidence when credible, clear, positive, direct, and when it could have been readily controverted). Nelson testifies to the standard procedures for noticing and conducting non-judicial foreclosure sales and

how appellees failed to comply with the standard procedures if it was their intention to include the La Casa property in the foreclosure.

4. In its substituted opinion, the majority deletes its prior conclusions that certain material facts were undisputed by the parties: As to LaSalle's intentions, "It is undisputed that LaSalle was seeking to have sold and to purchase all of the properties securing the note under the Deed of Trust—both the Casa Grande and La Casa Apartments," and as to the public notice, "It is undisputed that 'Property' was supposed to include all collateral for the note and that the legal description of the La Casa parcel was omitted from Exhibit A in error." The facts on these material issues were indeed hotly disputed by the parties.

arkana 1997, writ denied); *see also Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (same standards apply to declaratory judgments decided by summary judgment). Appellees, as the movants seeking affirmative requests for declaratory relief, had the burden to show they were entitled to judgment as a matter of law—that the notice complied with the property code and the Deed of Trust and that the Correction Deed was valid to vest title in both properties in LaSalle.[5]

For the foreclosure sale to convey both properties, the trustees had to have the power to sell the properties from the Deed of Trust and to have complied with the statutory requirements for non-judicial foreclosure. *See Houston First American Sav. v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983) ("Compliance with the notice condition contained in the deed of trust and as prescribed by law is a prerequisite to the right of the trustee to make a sale."); *Olivares v. Nix Trust*, 126 S.W.3d 242, 246 (Tex.App.-San Antonio 2003, pet. denied) (trustee's power to sell property is derived "solely from the deed of trust and can only be exercised in strict compliance with the note and conditions of sale"). Recognizing the harshness of collection through deeds of trust, strict compliance is required.[6] *See Musick*, 650 S.W.2d at 764 (citing *Fuller v. O'Neal*, 69 Tex. 349, 6 S.W. 181 (1887)). To uphold the trial court's declarations that both properties were sold at the foreclosure sale, appellees must have presented conclusive proof that the notice requirements were met. Notice of a non-judicial foreclosure sale must be given before the sale to the public and to the debtor. *See* Tex. Prop.Code Ann. § 51.002(b) (West 2007). The notice requirement seeks not only to protect the debtor to give him the opportunity to cure, but also to inform the public in order to "maximize the likelihood of a profitable public sale at market value in which the debtor may recover his equity in the property." *See Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674–75 (Tex. 1987); *Hausmann v. Texas Sav. & Loan Ass'n*, 585 S.W.2d 796, 799 (Tex.Civ.App.-El Paso 1979, writ ref'd n.r.e.) (general

---

5. The majority characterizes Myrad's claim as a wrongful foreclosure claim by asserting it was Myrad's burden to show that there was an "irregularity" in the foreclosure sale and that the price paid was "grossly inadequate." *See Powell v. Stacy*, 117 S.W.3d 70, 75 (Tex. App.-Fort Worth 2003, no pet.) (The threshold issue in action challenging the validity of a foreclosure sale is "whether there are any irregularities in the sale and if so, whether there is proof that those irregularities caused a sale at a grossly inadequate price."); *see also Sanders v. Shelton*, 970 S.W.2d 721, 724 (Tex.App.-Austin 1998, pet. denied); *Pentad Joint Venture v. First Nat'l Bank of La Grange*, 797 S.W.2d 92, 96 (Tex.App.-Austin 1990, writ denied). Wrongful foreclosure claims usually arise in the context of a lender's deficiency action because the foreclosure has not satisfied the outstanding debt. The opposite is at issue in this case. Myrad's position is that the price was adequate to convey the property that was included in the foreclosure sale, the Casa Grande property. It is appel-

lees—not Myrad—who seek to modify the foreclosure sale. It, therefore, was not Myrad's burden to show "irregularity" or "inadequate" price at the foreclosure sale, but appellees' burden to show that the foreclosure was a valid conveyance of the La Casa property in addition to the Casa Grande property.

6. Cobb testified that strict compliance with notice was required for non-judicial foreclosure sales:

 Q: ... That generally speaking, that a trustee sale is a substitution for a judicial foreclosure?

 A: Yes.

 Q: It's more expeditious. You don't go to court to get the property.

 A: True, yes.

 Q: And isn't it true that because you are basically taking somebody's property, that the law requires that it be done with precision and accuracy and in a fair manner?

 A: I agree.

purpose of statute "to provide a minimum level of protection for the debtor").[7]

To reach its conclusion that notice was legally sufficient as a matter of law, the majority relies on a letter from Myrad's counsel to Green that was sent before the foreclosure that referenced the foreclosure of both properties. A lender's intentions or a debtor's understanding, however, do not bear on whether the *notice to the public* was legally sufficient to satisfy the statutory requirements. The majority also relies on a sentence in the Notice that states "Notice is hereby given of Holder's election to proceed against and sell both the real property and any personal property described in the Deed of Trust ...," and on *Mercer v. Bludworth,* 715 S.W.2d 693, 700 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). The majority concludes that the sentence "unequivocally" notifies the reader that LaSalle would be proceeding against all of the real property described in the Deed of Trust despite also concluding that the document is "internally inconsistent."

The majority ignores contrary evidence including the documents and the testimony and conduct of the trustees. This evidence, viewed in the light most favorable to Myrad as the nonmovant, showed that the Notice and the Substitute Trustee's Deed did not identify the La Casa property as the property being sold and that the public notice, the Deed of Trust, and Strickland's conduct at the sale showed a

foreclosure of only the Casa Grande property. *See King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). Strickland, the trustee conducting the foreclosure sale, only recited the property description for the Casa Grande property as the property being sold. Further, Strickland recorded the Substitute Trustee's Deed on the same day as the foreclosure sale, demonstrating LaSalle's intent to convey only the Casa Grande property. *See Stephens County Museum, Inc. v. Swenson,* 517 S.W.2d 257, 261–62 (Tex. 1974) ("grantor intended to convey the land according to the terms of the deed ... when it is shown that the deed has been filed for record"). Cobb testified that the notice did not include the legal description for both properties:

Q: ... Do you consider it to be a mistake that a full legal description of both pieces of property was not included in the notice?

A: It was an error, and I don't know how it happened. It was an error that both were not included.

Cobb also testified that the Substitute Trustee's Deed only conveyed one property, "The deed conveyed one property, yes." [8]

The Deed of Trust was also consistent with the conveyance of only the Casa Grande property. Because the Deed of Trust specifically allows all or a part of the property to be sold, the Notice referencing the Casa Grande property and the Deed of

---

7. The need for statutory protections for borrowers is particularly apparent when the lender is also the purchaser at the non-judicial foreclosure sale, and strictly complying with the notice requirements is not onerous.

8. Cobb testified that the Substitute Trustee's Deed did not convey the La Casa property:

Q: Okay. Now you would agree with me that a deed does require a metes and bounds description to be effective?

A: Yes. Actually, that's not entirely true. I've seen deeds with lot and block descriptions that are effective.

Q: Okay. Either/or?

A: Uh-huh, yes.

Q: Okay. And in this case, there was neither a metes and bounds nor a lot and block description of La Casa?

Appellees' Counsel: Object to the form.

A: That's correct, yes.

Q: And so the deed was defective in that regard?

A: The deed conveyed one property, yes.

Trust is consistent with an intention to provide potential purchasers with a "more particular description" for the Casa Grande properties, the property being sold. *See American Sav. & Loan Ass'n v. Musick*, 531 S.W.2d 581, 585 (Tex.1975) ("Although the deed did refer to the deed of trust for a more particular description of the land conveyed, the deed did not purport to convey *all* of the tracts described in the deed of trust."). The majority discounts the provision in the Deed of Trust that expressly allows the trustees to sell the "Property or any part thereof" by stating that it "impl[ies] nothing about which of these remedies [LaSalle] had elected." The majority's interpretation renders the Property description actually contained in the Notice meaningless. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Because the Notice on its face contains no error as a notice to sell the Casa Grande property, the public would have had no reason to contact the trustee to determine if any other property was being sold.

Similarly, the sentence in the Notice—"Notice is hereby given of Holder's election to proceed against and sell both the real property and any personal property described in the Deed of Trust . . . ."—is not conclusive to satisfy the notice requirements when read in context with the sentence's reference to section 9.604 of the Texas Business and Commerce Code. *See Seagull Energy*, 207 S.W.3d at 345; *Luckel v. White*, 819 S.W.2d 459, 461–62 (Tex.

1991) (all parts should be harmonized in construing an instrument to give effect to all of its provisions).[9] Section 9.604 addresses when a security agreement covers both real and personal property. *See* Tex. Bus. & Com.Code Ann. § 9.604 (West 2002). A secured party, in the event of default, has the option to proceed against both the personal and the real property covered by a security agreement in accordance with the secured party's rights and remedies with respect to the real property. *Id.* Nelson averred in his affidavit that this language is not customarily used to describe the real property that is being foreclosed but to express a lender's election to foreclose on the personal property at the same time and under the same procedure as the real property. *See id.*

The majority's reliance on *Mercer v. Bludworth* is also misplaced. *See* 715 S.W.2d at 695. *Mercer* was not decided in summary judgment but after a trial. *See id.* at 695, 698. Further, the majority equates the failure to identify the correct date and recording reference of a deed of trust with the addition of a separate piece of property to the one identified in the notice. *See id.* at 700. I would hold that appellees failed to conclusively prove that the public notice met the statutory notice requirements for the La Casa property and that the trial court erred in declaring that the foreclosure sale conveyed the La Casa property to LaSalle.[10]

Because I would hold that the trial court erred in declaring that the foreclosure sale

9. At most, I would conclude that appellees have created a fact issue on the interpretation of the notice. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006) (ambiguity exists when "language is susceptible to two or more reasonable interpretations"); *see also Coker v. Coker*, 650 S.W.2d 391, 394–95 (Tex.1983) (summary judgment improper when instrument contains an ambiguity because interpretation becomes fact issue).

10. As part of its argument, appellees contend that ruling that the foreclosure sale was only as to the Casa Grande property would result in Myrad receiving a windfall. The majority's holding has resulted in the opposite. Appellees have been granted a windfall and complete reprieve from their admitted failure to strictly comply with statutory notice requirements. The majority in effect substitutes its judgment for the trier of fact that the notice was good enough with the result that appellees have been given a windfall, including

conveyed the La Casa property, I also would hold that the trial court erred in declaring the Correction Deed vested title in the La Casa property in LaSalle. Appellees, as the movant and with the burden of proof, had to present evidence that conclusively showed that the Correction Deed was valid to vest title in the La Casa property in LaSalle. A correction deed may be filed to correct "facial imperfection in the title." *Adams v. First Nat'l Bank of Bells/Savoy,* 154 S.W.3d 859, 871 (Tex. App.-Dallas 2005, no pet.); *see also Joe T. Garcia's Enters., Inc. v. Snadon,* 751 S.W.2d 914, 916 (Tex.App.-Dallas 1988, writ denied) ("A correction deed is executed and recorded for the unique purpose of correcting a scrivener's error in the *description* of the property."); *but see CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.,* 177 S.W.3d 425, 434 (Tex. App.-Houston [1st Dist.] 2005, pet. denied) (correction deed may do more than correct a scrivener's error in the description of property).

Appellees contend that the failure to attach the property description for the La Casa property on the Notice, the Appointment of Substitute Trustee, and Substitute Trustee's Deed was a clerical error and, thus, the Correction Deed was proper to correct the description of the property in the Substitute Trustee's Deed as a matter of law.[11] Whether appellees' error in not attaching the La Casa property description was clerical or otherwise is not determinative. *See Alfalfa Lumber Co. v. Mudgett,* 199 S.W. 337, 338–39 (Tex.Civ.App.-Amarillo 1917, no writ) (purpose of public notice defeated if showing of mistake in property to be sold permits reformation of sheriff's deed). The character of the error does not address the required public notice for a foreclosure sale to be valid. Otherwise, a party unilaterally could file a correction deed to vest title in a separate piece of property regardless of whether the notice and sale as to the separate property complied with the public notice requirements, a result that would circumvent and eliminate the statutory requirements in that situation.[12]

Myrad's equity in the property. LaSalle's representative testified that Myrad had "several hundred thousand dollars of equity in the property" at the time of the foreclosure sale, and Myrad presented evidence that the amount of equity was significantly higher. An alternative remedy sought would not have resulted in a windfall to either party—the foreclosure sale could have been rescinded and re-conducted in compliance with the statutory requirements. This equitable solution has been foreclosed without the benefit of trial.

**11.** Appellees' evidence that the failure to attach the metes and bounds description for the La Casa property was a clerical error included Cobb's testimony that it was her intention to prepare the foreclosure paperwork as to both properties and the evidence of LaSalle's credit bid at the foreclosure sale.

**12.** This is precisely what happened in this case. Cobb testified that there was nothing wrong with the property description for the

Casa Grande property on the Substitute Trustee's Deed but that the correction deed was filed to include the La Casa property—an additional piece of property:

Q: Now, there was nothing wrong with the property description on the first deed insofar as it described La Casa, was there—Casa Grande? Strike that.

A: Casa Grande, that's correct.

Q: Now, typically a corrective deed is filed when there's an error in the property description, like it's Block 12. In reality, it's recorded as Block 12, but instead you end up putting Block 11.

A: The property description on the original Trustee's Deed was incomplete. That's why we filed a corrective deed after the injunction hearing.

Q: Well, I want to go over that with you. Are you familiar with corrective deeds?

A: Honestly, I've never had to file one before.

Q: Okay. Well, that would be one when you could use one, when there was an

I would hold that a party cannot unilaterally file a correction deed to vest title in a separate piece of property that was not noticed in compliance with statutory requirements or specifically included in a non-judicial foreclosure sale. Because appellees did not conclusively prove that they properly noticed the La Casa property for foreclosure, I would hold the trial court erred in its declaration that the Correction Deed vested title in the La Casa Apartments in LaSalle and that appellees were without authority to unilaterally file the Correction Deed to vest title in the La Casa property.[13]

### Breach of Trustee's Duty and Conspiracy to Breach

The majority concludes that for the same reasons summary judgment was appropriate on appellees' declaratory claims for relief, summary judgment also was appropriate on Myrad's claims for breach of trustee's duty and conspiring to do so.[14] I

would conclude that fact issues remain that preclude summary judgment.

Although not a fiduciary duty, a trustee has a duty in connection with a foreclosure sale to act with " 'absolute impartiality and fairness' to all concerned, including the mortgagor." *See Peterson v. Black*, 980 S.W.2d 818, 822 (Tex.App.-San Antonio 1998, no pet.); *First State Bank v. Keilman*, 851 S.W.2d 914, 925 (Tex.App.-Austin 1993, writ denied) (citing *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex.1977)). A trustee fulfills the duty of impartiality and fairness by "strictly complying with the terms of the deed of trust." *Keilman*, 851 S.W.2d at 925.

Myrad's evidence sufficiently raised genuine issues of material fact whether the trustees breached their duty to Myrad and conspired to do so in their conduct surrounding the Notice, the foreclosure sale, and the Correction Deed, including whether they properly filed the Correction Deed after the foreclosure sale without a court

---

error in describing the property that was actually conveyed, right?

A: Yes.

Q: But there was nothing wrong with the property description that was made of Casa Grande, it simply did not include an additional piece of property that you thought it should include?

A: There was an error in the overall property description of the collateral, which we foreclosed on. As to Casa Grande, isolated, no. As to the collateral, yes, it was incomplete and it was in error.

13. Appellees urged summary judgment on Myrad's claim to quiet title on the same grounds. Appellees also urged alternative declaratory grounds for summary judgment that LaSalle maintained legal and equitable interest in the properties and that the foreclosure sale did not result in the Deed of Trust being extinguished to allow appellees to re-conduct the foreclosure sale. I would also conclude that these alternative claims for declaratory relief and Myrad's claim to quiet title are intertwined and dependent on the resolution of disputed issues of material fact.

14. Appellees sought both traditional and no-evidence summary judgment on Myrad's breach of trustee and conspiracy claims. Appellees argued in their motion that they were entitled to summary judgment (i) on the claim for breach of trustee's duty because "the Substitute Trustee strictly complied with the terms of the Deed of Trust and, therefore, fulfilled its duty of impartiality and fairness" and "[t]here was no other duty owed to Plaintiff," and (ii) on the conspiracy claim because "Defendants did not owe a fiduciary duty to Plaintiff and, therefore, did not commit an unlawful or overt act, as required to prove an action for conspiracy." Appellees also argued—in two sentences—that they were entitled to no-evidence summary judgment on the breach of trustee claim and the conspiracy claim: (i) "Plaintiff has no evidence to support that Defendants owed a fiduciary duty to Plaintiff," and (ii) "Plaintiff has no evidence to support that Defendants committed one or more unlawful, overt acts against Plaintiff."

order or Myrad's agreement. *Bonilla v. Roberson,* 918 S.W.2d 17, 22 (Tex.App.-Corpus Christi 1996, no writ) ("There must be a certain point in time at which the sale by the trustee may be said to have been completed and his duties and authority come to an end.... Any subsequent action to avoid the sale must be brought by the parties as a cause of action.").[15] Myrad's evidence was that the trustees did not strictly comply with the Deed of Trust and that they participated in filing the Correction Deed to vest title in the La Casa property despite knowing the property had not been properly noticed for the foreclosure sale or recited by the trustee as being sold at the foreclosure sale. As to appellees' motion against Myrad's claim for conspiracy, appellees challenged only the element of an "unlawful, overt act." Myrad presented evidence that the trustees breached their duty to be fair and impartial to Myrad, which actions constitute evidence of "unlawful, overt acts" as part of a conspiracy.[16] I would conclude

that appellees were not entitled to summary judgment on Myrad's claims for breach of trustee's duty and conspiracy to do so.

## Myrad's Claim for Surplus

The majority concludes that Myrad has presented a fact issue on its declaratory claim that a surplus is owed, sustains Myrad's issue on this point, and remands Myrad's surplus claim to the trial court for further proceedings. *See* Tex.R. Civ. P. 166a(i).[17] I concur with this result.

To defeat a no-evidence motion, "the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." *Id.* cmt. Myrad was not required to show the specific amount of surplus that it ultimately will claim is owed at trial or to provide evidence of each improper charge to defeat summary judgment. *Id.* Viewing the evidence in the light most favorable to Myrad as the nonmovant, there remain genuine

---

15. There was also evidence that the trustees' actions caused Myrad damage. When La-Salle bid $978,000 at the foreclosure sale, there was evidence that third parties were interested in the properties, that third parties attended the foreclosure sale, and that Myrad had equity in the properties. Cobb testified that she had been contacted by a potential third-party bidder and that there was a good chance that a third-party bidder wanted to purchase the property at the foreclosure sale.

16. The elements of a civil conspiracy claim are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as the proximate result. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983).

17. The majority states that the burden was on Myrad "to raise a fact issue regarding each element of its [surplus] claim." Faced with a no-evidence motion, however, the nonmovant need only address the elements of its claim that the movant specifically addresses in its

motion. *See* Tex.R. Civ. P. 166a(i). Appellees in the no-evidence portion of their motion do not address Myrad's declaratory claim for surplus specifically, but globally state "Plaintiff cannot present any evidence sufficient to raise a question of fact on the causes of action pleaded against Defendants." I would hold that appellees did not identify an element of Myrad's surplus claim that would require Myrad to present evidence to defeat no-evidence summary judgment. On this basis alone, I would hold that appellees' no-evidence summary judgment should have been denied. *See* Tex.R. Civ. P. 166a(i).

Appellees' only reference to Myrad's declaratory claim that it is owed a surplus in their traditional summary judgment portion of their motion was that "Plaintiff cannot establish the essential elements for its requested declaratory relief." *See* Tex.R. Civ. P. 166a(c) and 166a(i). They do not address the balance Myrad owed at the time of the foreclosure. To be entitled to traditional summary judgment, it was appellees' burden—not Myrad's—to prove conclusively that no surplus was owed. *See* Tex.R. Civ. P. 166a(c).

issues of material fact that preclude summary judgment in appellees' favor on Myrad's declaratory claim that it is owed a surplus.

Because there are genuine issues of material fact that should preclude summary judgment and the majority opinion only feigns fidelity to the statutory requirements of non-judicial foreclosure, I would reverse and remand to the trial court for further proceedings.[18]

18. I would also conclude that Myrad's motion for partial summary judgement was properly denied because there are genuine issues of material fact that remain. Myrad sought partial summary judgment pursuant to Rule 166a(c) on its declaratory claims that the foreclosure sale was valid, that the sale did not convey the La Casa property, that Myrad is entitled to a credit, and that the Correction Deed was void and unenforceable. Myrad also sought summary judgment pursuant to Rules 166a(c) and 166a(i) on appellees' claims for rescission and reformation. The evidence raised several fact issues including the amount of the outstanding debt that Myrad owes under the Note and the Deed of Trust; whether a surplus is owed to Myrad and, if so, how much; what the parties' intentions and understanding were as to the foreclosure sale; and whether mistake, unjust enrichment or the agreement between the parties support rescission or reformation of the foreclosure sale. *See Davis v. Grammer,* 750 S.W.2d 766, 768 (Tex.1988) (based on jury finding of mutual mistake, deed reformed); *Hatch v. Williams,* 110 S.W.3d 516, 522 (Tex.App.-Waco 2003, no pet.) (after a bench trial, court granted reformation due to mutual mistake in property description in deed); *Lowrey v. University of Texas Med. Branch,* 837 S.W.2d 171, 174 (Tex.App.-El Paso 1992, writ denied) (equitable remedy of rescission allows courts to set aside a contract that is legally valid but "marred by fraud, mistake, or for some other reason must be set aside to avoid unjust enrichment").